```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
             EASTERN DIVISION
```

| | |
|---|---|
| **JAMES KAFANTARIS,** <br><br> Plaintiff-Appellant, <br><br> v. <br><br> **CANELLA SIGNORE,** <br><br> Defendant-Appellee. | **Case No. 10 C 7320** <br> Appeal from Bankruptcy Court <br> Case No. 09 B 13534 <br> Adversary No. 09 A 667 <br><br> Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff-Appellant James Kafantaris's (hereinafter, "James") appeal of the Bankruptcy Court's order granting summary judgment in favor of Defendant-Appellee Kanella Signore (hereinafter, "Kanella") on all three counts of James's adversary complaint, which he brought under 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523 (a)(2)(A). For the reasons stated below, the bankruptcy court's decision is affirmed on all counts.

### I.  INTRODUCTION

This case demonstrates money's power to fracture a family. James and Kanella are brother and sister. They have no other siblings. The contested money originates from their late mother, Jean Kafantaris (hereinafter, "Jean"). After Jean's husband, William, died in December 1996, Kanella, her husband, and Jean bought and moved into a townhouse together, in which they shared living expenses. Jean's health deteriorated after moving in with

her daughter, and eventually she lost almost all use of her right hand, which deprived her of the ability to, among other things, bathe or dress herself. Around November 2003, Kanella hired Ken Klepper ("Klepper") on a full-time basis to care for Jean. On November 14, 2003, Jean executed a Power of Attorney for her finances, which named Kanella her agent and Kanella's daughter Elaine Schima (hereinafter, "Elaine") her successor agent.

A series of financial transactions that followed Jean's execution of the Power of Attorney are the focus of this case. On November 19, 2003, Kanella and Elaine accompanied Jean to a Charter One Bank branch. Here, they closed three accounts — No. 8053155958 ($86,531.77), held jointly by Jean and James; No. 8052271902 ($9,736.64), held jointly by Jean, Kanella, and James; and No. 8865187115 ($101,416.72), held jointly by Jean and James — and converted them into a $197,685.13 certified check. Jean could not sign the withdrawal slip to close one of the accounts, so she asked Kanella to sign it for her. Kanella refused to do this, but instead placed her hand over Jean's to help her sign. Thereafter, they went to a TCF Bank branch, where Jean closed Account No. 2864057952 — which was held jointly by Jean and James — that had a balance of $117,205.33. Prior to closing this account, Jean issued three $10,000 cashier's checks from it, made out to James, Kanella, and Elaine. Thereafter, Jean combined the remaining balance of this TCF account, and the $197,685.13 certified check,

and opened a new TCF account with a balance of $284,890.46 (No. 387935152). This account was held jointly by Kanella, James, and Elaine.

The record also contains an undated withdrawal slip, which allegedly bears Jean's signature, from another TCF account (No. 8865211926). The withdrawal was for $456.42 in cash and an $86,638.19 cashier's check. The record is silent as to what happened with this money after this withdrawal.

Less than one week after opening the new TCF account, Kanella opened an account at Mid America Bank (No. 200266807), funded by two withdrawals totaling $180,000 from the newly created TCF account. The Mid America account was held jointly by Kanella and James. On November 30, 2003, Kanella opened two brokerage accounts, each with an initial balance of $45,000. She funded these with money withdrawn from the new TCF account. The account at Scudder Investments was held jointly by Jean and Elaine, and the account at Franklin Templeton was held jointly by Jean and Kanella.

In November 2003, Jean met with an investment advisor named John "Jack" Flood ("Flood"), who helped Jean shelter her estate from taxes. Kanella did not attend these meetings, at which Flood advised Jean to withdraw money from some of her bank accounts and deposit it into mutual funds.

Jean died on October 21, 2006, at the age of 90. In her Will, which James did not contest, Jean left her real and personal

property to Kanella. She forgave James of his remaining balance on a $30,000 promissory note he used to purchase the restaurant Billy's Fountain and Grill — which he still owns and operates — from Jean and William in 1975. On November 24, 2006, Kanella gave James a $35,000 check drawn from the Mid America account.

James, however, contends that Kanella misappropriated money from Jean's estate that belongs to him. He alleges that Jean had an estate plan to split her assets between her children and grandchildren, and that Kanella initiated the aforementioned financial transactions to disrupt this plan. He initially filed a Complaint with these allegations in the Chancery Division of the Circuit Court of Cook County, Illinois. Kanella filed a Petition for Chapter 7 Bankruptcy Protection in the Bankruptcy Court for the Northern District of Illinois while a Motion to Dismiss was pending in James's Circuit Court case. James subsequently filed an Adversary Complaint with the Bankruptcy Court, alleging the same facts as in the Circuit Court case. The crux of his allegations is that Kanella breached her fiduciary duties to Jean and transferred funds out of the accounts in which James had a joint tenancy, thereby taking his money for herself.

The Bankruptcy Court granted Kanella Summary Judgment on all three counts of James's Adversary Complaint, which he brought under 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523 (a)(2)(A). James' timely appeal of this decision is currently before this Court.

## II. <u>STANDARD OF REVIEW</u>

The Court reviews the Bankruptcy Court's legal findings *de novo*, and its findings of fact for clear error. *See In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000).

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *See id.* at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations from the pleadings, but must present specific facts showing that a

genuine issue exists for trial. *See Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their positions that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. FED. R. CIV. P. 56(c).

### III. **ANALYSIS**

#### A. **James's Standing to Raise Adversary Claims**

Kanella argues that James lacks standing to raise his adversary claims. The Bankruptcy Court alluded to this issue in its opinion, but did not rule on it. For standing to bring an adversary proceeding to contest the discharge a debt, the proceeding must be commenced by a creditor. *See In re Hennings*, No 99-74118, 2001 WL 34681652, at *3 (Bankr. C.D. Ill. May 17, 2001). James alleges he is Kanella's creditor. As such, he has standing to raise his adversary claims.

#### B. **11 U.S.C. § 523(a)(4) Claim**

Under 11 U.S.C. § 523(a)(4), a debtor cannot receive a discharge through bankruptcy from a debt obligation when the debt was incurred through "fraud or defalcation while acting in a fiduciary capacity. . . ." Two elements must exist to bring such an adversary claim: (1) a fiduciary relationship; and (2) fraud or

defalcation.  *See In re Howard*, 339 B.R. 913, 919–20 (Bankr. N.D. Ill. 2006).  The Court looks first to federal law to determine if the debtor acted in a fiduciary capacity, but may also consider relevant state law to analyze this relationship and duty.  *See In re Volpert*, 175 B.R. 247, 260 (Bankr. N.D. Ill. 1994).  Of particular significance in this case, the debt must be directly related to a fiduciary relationship between the debtor and creditor.  *See In re McDade*, 282 B.R. 650, 659 (Bankr. N.D. Ill. 2002); *In re Baillie*, 368 B.R. 458, 469 (Bankr. W.D. Pa. 2007).  As with other discharge exceptions in § 523(a), the creditor must prove his case by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 291 (1991).

In this case, James does not allege, nor does the record contain evidence, that Kanella served as James's fiduciary.  Rather, James argues that Kanella breached her fiduciary duty to Jean by transferring funds for her benefit.  The parties have briefed this issue extensively.  The Court need not rule on the relationship between Jean and Kanella, however, as it is irrelevant to James's claim.  For James to raise a claim on his own behalf as Kanella's creditor, the fiduciary relationship must exist between the creditor and debtor for a debt to be deemed nondischargeable under § 523(a)(4).  *See In re McDade*, 282 B.R. at 659.  The record here does not establish such a relationship.  Accordingly, the Bankruptcy Court's ruling on the § 523(a)(4) claim is affirmed.

## C. 11 U.S.C. § 523(a)(6) Claim

Next, James contends that Kanella's alleged debt is not dischargeable because it is "for willful and malicious injury" by her to his property. 11 U.S.C. § 523(a)(6). Under this statute, for a debt to be nondischargeable, the debtor must deliberately or intentionally injure another's property. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). As such, the debtor must have a subjective intent to cause the injury, or must subjectively believe that such injury would be substantially certain to occur through her actions. *See In re Cox*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Either way, the debtor must have an actual intent to cause an injury. *See Kawaauhau*, 523 U.S. at 61.

Here, James alleges that Kanella intended to deprive him of money that was his under Jean's estate plan. The record, however, contains Jean's Will, which James did not contest, which expressly revokes any prior Will or Codicil. This Will is the controlling testamentary plan in this case, especially considering that James has not presented evidence of the other estate plan Jean allegedly had. Furthermore, James states in his affidavit that he never talked with Jean about her finances or estate plan. Kafantaris Dep. 71:17–72:2, Apr. 30, 2010. His sworn deposition testimony contradicts the allegations he makes regarding the existence of Jean's unwritten estate plan.

Jean, as a joint account holder with James in some of the

contested bank accounts, had the right at any time to withdraw any and all sums from the accounts. *See Pacenta v. Am. Sav. Bank*, 552 N.E.2d 1276, 1280 (Ill. App. 1990). Kanella has produced an affidavit stating that any actions she took withdrawing money from the Charter One and TCF bank accounts, and establishing the new TCF account, were done at Jean's request. Signore Aff. ¶ 30. In addition, the affidavit from financial advisor John Flood states that he had meetings in 2003 with Jean, which Kanella did not attend, at which he provided Jean advice about how to avoid certain tax liabilities by transferring money out of her bank accounts. Flood Aff. ¶¶ 3-9. He states that Jean, at 87 years old, was "competent, aware of what she was doing, and exercising independent judgment." *Id*. at ¶ 6. Kanella has presented evidence that Jean initiated the contested financial transactions on her own accord.

To rebut this evidence, James cannot rely on his pleadings, but must present specific facts that establish a genuine issue for trial. *See Big O Tire Dealers*, 741 F.2d at 163. He fails to do this. In his deposition, he states that he thought Kanella "drew the money out [of the accounts] for herself." Kafantaris Dep. 115:7-8, Apr. 30, 2010. He repeats his allegation that Kanella took the money later in the deposition. *Id*. at 130:19-23. No other evidence supports this claim. Such an unsupported allegation is merely speculative and conclusory, and cannot defeat summary judgment. *See Berry v. Chicago Transit Auth*., 618 F.3d

688, 692 (7th Cir. 2010). Also, no evidence exists as to what happened with the balance of the Mid America account opened on November 25, 2003, besides the $35,000 check James received. The Court can only speculate that this money went toward paying for Jean's expenses in the final years of her life, such as paying for her full-time care givers. This speculation, of course, has no bearing on the disposition of this case.

James also points to Kanella's failure to document what happened to the assets of one TCF account (No. 8865211926) that was allegedly closed on November 19, 2003, and the balance in the TCF account created on November 19, as creating a genuine issue of material fact that Kanella's debt is not dischargeable. No evidence exists, however, that Kanella did anything with this money that was not at Jean's request. In addition, Jean had a right to withdraw and use all money in the accounts. James has not met his burden to establish the elements of a § 523(a)(6) claim. Accordingly, the Bankruptcy Court's ruling is affirmed on this count.

### D. 11 U.S.C. § 523(a)(2)(A) Claim

Finally, James alleges that Kanella's debt is not dischargeable because she obtained money that was rightfully his through false pretenses, false representations, or actual fraud. 11 U.S.C. § 523(a)(2)(A). A prerequisite for a debt to be nondischargeable under this statute is that the creditor must rely

on the debtor's false statement or fraudulent misrepresentation. *See Field v. Mans*, 516 U.S. 59, 66 (1995); *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998) ("A creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation."). In this case, James has not tendered evidence that he was induced to act through a false or fraudulent representation that Kanella made to him. Any alleged statements that Kanella made to Jean are irrelevant for James's adversary complaint as a creditor under this statute. Accordingly, the Bankruptcy Court's decision is affirmed.

## IV. CONCLUSION

For the reasons stated herein, the Bankruptcy Court's Decision is affirmed on all counts of James's Adversary Complaint.

**IT IS SO ORDERED.**

  
_____  
Harry D. Leinenweber, Judge  
United States District Court

**DATE**: 5/5/2011